Marty Houston LOVELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 49963.

Court of Criminal Appeals of Texas.

July 23, 1975.

Daniel D. Sullivan, Andrews, for appellant.

Ed Paynter, Dist. Atty. and Patricia A. Elliott, Asst. Dist. Atty., Abilene, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

GREEN, Commissioner.

This is an appeal from a conviction for injury to a child. The punishment, assessed by the jury, is 14 years.

The sufficiency of the evidence is not challenged.

In his first ground of error, appellant contends the trial court committed reversi-

ble error in admitting into evidence his written confession. We agree.

The record reflects that on February 10, 1974, the date the confession was made, appellant was a child, aged 16 years.[1] On such date, Officer Jim W. Johnson of the Abilene Police Department received a call from a nurse at Hendrick Memorial Hospital. As a result of the call Officer Johnson went to the hospital where he spoke with Dr. Herman Schaffer, appellant and appellant's wife, then viewed the battered baby. Officer Johnson gave appellant his Miranda warnings at the hospital, and drove him directly to the police station where he warned him again.[2]

At the police station, appellant, without the aid, advice or presence of counsel, signed a "waiver" of his rights and made a statement which was reduced to writing and introduced at the trial as State's Exhibit # 6.

During the trial and before allowing the statement into evidence, the trial court conducted a hearing, outside the presence of the jury, to determine the issue of the admissibility of appellant's confession. The evidence at the hearing reflected, and the court found, that appellant was duly advised of his constitutional and statutory rights, including the right to be represented by counsel, and that he knowingly and voluntarily waived those rights and made the confession. No lawyer was present representing appellant, and at that time he was not represented by counsel, retained or appointed.

At the trial appellant objected to the admission of the confession in evidence on the ground that he was a child under seventeen years of age when he gave the confession, and was not represented by counsel as required by Title 3 of the Family Code, and that, consequently, his waiver of counsel was void and the confession was inadmissible. The objection was overruled, and the confession was admitted.

On appeal, appellant contends that his waiver of his rights, including the right to be represented by legal counsel, was void at its inception by virtue of V.T.C.A., Family Code, Title III, Section 51.09(1) and (2), which read:

> "Unless a contrary intent clearly appears elsewhere in this title, any right granted to a child by this title or by the constitution or laws of this state or of the United States may be waived in proceedings under this title if:
>
> "(1) the waiver is made by the child and the attorney for the child;
>
> "(2) the child and the attorney waiving the right are informed and understand the right and the possible consequences of waiving it . . ."
> V.T.C.A., Family Code, Title III, Section 51.09(1), (2).

We find no contrary intent expressed anywhere in Title III in regard to the waiver of right to silence and right to counsel.

■ Miranda teaches that a heavy burden rests upon the prosecution to prove that a person in custody "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." 384 U.S. at 475, 86 S.Ct. at 1628. The Court in Miranda[3] relied upon *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), in which

---

1. V.T.C.A., Family Code, Title III, Section 51.02 provides:

   "In this title: (1) 'Child' means a person who is: (A) ten years of age or older and under 17 years of age; or (B) seventeen years of age and under 18 . . ."

2. The officer read appellant his constitutional and legal warning from a card which was read into the record. We have reviewed same and find it complies with the standards set forth by this Court and the Supreme Court of the United States.

3. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the Court unequivocally stated that the determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. Miranda further holds the states are free to develop their own safeguards as long as their standards meet those expressed in Miranda; Texas has done this for juveniles in Section 51.09, *supra*.

Prior to the enactment of the Family Code, a minor could waive his right to counsel before making an extrajudicial statement. *Moreno v. State,* Tex.Cr.App., 511 S.W.2d 273; *Garza v. State,* Tex.Cr.App., 469 S.W.2d 169; *In re Garcia,* 443 S.W.2d 594 (Tex.Civ.App.—El Paso, 1969).

Title III of the Family Code was enacted in 1973 with the stated purpose of assuring a fair hearing in which the constitutional and other legal rights of the parties are recognized and enforced. V.T.C.A., Family Code, Section 51.01. The Legislature was aware of the admonitions of the United States Supreme Court in *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), that the admissions and confessions made by a child require careful inquiry and special caution, and in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), that the juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and prepare to submit it. The child "requires the guiding hand of counsel at every step of the proceeding against him." The Gault decision extended the constitutional right to remain silent, and thereby to resist compulsory self-incrimination, to children. Title III of the Family Code is an enactment of the above concepts; it determines and protects the best interest of the child, assures the constitutional and other legal rights of the child are recognized and en-

forced, and permits waiver of the child's rights only under certain conditions. *In re R.E.J.,* 511 S.W.2d 347 (Tex.Civ.App.—Houston [1st Dist.] 1974). The Family Code underscores its protections by providing that, in the adjudication hearing provided by Title III, an extrajudicial statement which was obtained without fulfilling the requirements of this title or of the Constitution of this State or the United States may not be used in such hearing. V.T.C.A., Family Code, Section 54.03(e). This section augments Section 51.09 but does not limit it. See *In re F.G.,* 511 S.W.2d 370 (Tex.Civ.App.—Amarillo 1974). Since the enactment of the Family Code, the courts have concluded that the Legislature obviously provided a safeguard for children, including the right to silence and an absolute right to an attorney during custodial interrogations, unless with an attorney the child waives that right in accordance with the terms of the statute. The "waiver" executed without the child's attorney is a nullity. *In re S.E.B.,* 514 S.W.2d 948 (Tex.Civ.App.—El Paso 1974); *In re V.R.S.,* 512 S.W.2d 350 (Tex.Civ.App.—Amarillo 1974); *In re R.E.J., supra; In re F.G., supra.*

The record reflects appellant "waived" his rights prior to the court's action in waiving its juvenile jurisdiction and transferring him to the appropriate court for criminal proceedings. The Family Code provides that, on transfer for criminal proceedings, the child shall be dealt with as an adult in accordance with the Texas Code of Criminal Procedure, 1965. V.T.C.A., Family Code, Section 54.02(h). This provision triggers the issue of the applicability of 38.22, Vernon's Ann.C.C.P., upon such transfer. The trial court's holding reaches behind the transfer in holding appellant waived his rights at the time of the confession. The trial court erred for the reasons stated above.

Nor does the court's transference revive the "waiver" executed by appellant. The Legislature deliberately chose the lan-

guage "unless a contrary intent clearly appears." No contrary intent clearly appears in Section 54.02(h), *supra*. We cannot, by implication, construe 54.02(h) on the basis that it was the intent of the Legislature that the transferral result in breathing life into a void waiver. If the Legislature had intended such a result, it would have clearly said so.

■ Moreover, were we to construe Section 54.02(h) in the manner sought by the State, the State could henceforth circumvent Section 51.09 merely by having the child transferred to a criminal court. This would make the Family Code protections meaningless and run counter to the presumptions that, in enacting a statute, the entire statute is intended to be effective, a just and reasonable result is intended, and a result feasible of execution is intended. See Vernon's Ann.Civ.Stats., Art. 5429b–2 (Code Construction Act).

■ Since the Family Code itself will not permit waiver of the child's rights by implication, the confession is admissible only if 38.22, V.A.C.C.P., prevails over the Family Code provisions in question. It is the Family Code which prevails.

Art. 5429b–2, Section 3.05(a), ". . . if statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails.

Art. 5429b–2, Section 3.06, "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail." Vernon's Ann.Civ.Stats., Art. 5429b–2 (Code Construction Act).

The Code Construction Act applies to the Family Code and Art. 38.22, V.A.C.C.P. Code Construction Act, Section 1.02(1) and (2), respectively. Section 51.09 of the Family Code went into effect on September 1, 1973.[4] Art. 38.22 was enacted with the Code of Criminal Procedure, 1965, and was amended in 1967. Section 51.09 is the more specific enactment and also controls for that reason.

Pursuant to the Code Construction Act, *supra*, we hold Section 51.09 of the Texas Family Code prevails as an exception to Art. 38.22, V.A.C.C.P., where applicable. The confession, having been taken in violation of Section 51.09, is inadmissible as a matter of law.

■ The State contends that appellant waived the error in the admission into evidence of the confession because, in attempting to show appellant was intoxicated or insane at the time of the offense, appellant's counsel brought out the same testimony he alleged was error. The attempt at the insanity defense, even though logically inconsistent, did not, by itself, preclude denial of the allegations in the indictment. Art. 27.17, V.A.C.C.P. The State places reliance upon the general rule that the admission of improper evidence will not constitute reversible error if the same facts were proved by other and proper testimony, as where the defendant voluntarily gives testimony as that improperly admitted over objection. 5 Tex.Jur.2d 446. This rule is not without exceptions. In *Alvarez v. State,* 511 S.W.2d 493, this Court held the defendant does not waive the error if he offers "testimony to rebut, destroy, or explain" the improperly admitted evidence. See also *Nicholas v. State,* 502 S.W.2d 169 (On Reh. at 173). 1 Branch's Ann. P.C.2d, Sec. 119, p. 134 (1956).

In the cases cited by the State in support of its position, the evidence admitted elsewhere without objection is the same or sub-

4. Acts 1973, 63rd Leg., Ch. 544, eff. Sept. 1, 1973.

stantially the same as objected to earlier. *Vela v. State,* Tex.Cr.App., 516 S.W.2d 176; *Davis v. State,* Tex.Cr.App., 516 S.W.2d 157; *Patterson v. State,* Tex.Cr.App., 509 S.W.2d 857; *Walker v.State,* Tex.Cr.App., 499 S.W.2d 177; *Bain v. State,* Tex.Cr.App., 492 S.W.2d 475; *Berry v. State,* Tex.Cr. App., 477 S.W.2d 284; *Curry v. State,* Tex. Cr.App., 468 S.W.2d 455; *Brown v. State,* Tex.Cr.App., 457 S.W.2d 917; *Browning v. State,* Tex.Cr.App., 432 S.W.2d 85; *East v. State,* Tex.Cr.App., 420 S.W.2d 414.

Appellant's confession is as follows:

"My name is Marty Houston Lovell, I am 16 years of age and I live at 1934 Burger, Abilene, Texas.

"Approx. 3 or 4 days ago I spanked my 7 week old son, Mathew Lovell, because he was crying.

"I can't remember the exact date or time. I hit him on the butt about 3 times. I spanked him again the next day or so. I kept spanking him, I don't know why. I also hit him on the back yesterday.

"My wife got on to me and said she would leave me if I spanked him again, this was in the afternoon. Brenda (my wife) went over to Sandy Brown's house, 1958 Fannin, to call Jack Landrum and left him with me and he [*M.H.L.*] started crying and I hit him in the face. His nose started bleeding and he stopped breathing. My wife came in and I told her he had stopped breathing and went to call the safety cruiser. She don't know about me hitting him. I didn't tel— her. I returned to the house and she told me to go call Dr. *Sh*affer and when I got back to the house they had taken him to the hospital.

"This is a true and correct statement given of my own free will and accord on this day Feb. 10, 1974."

In the instant case, the statements which the State submits constitute waiver of appellant's error are as follows:

Officer Johnson testified without objection:

"Q Well, did he make any statement to you at that very time that at the time he hit this child in the face or whether or not he was under the influence of glue?

"A No, sir.

"Q He didn't make any statement at all?

"A He said he—at the time that I asked him was he high on the glue, the words I used, when he hit the child, he said, no, he wasn't.

"Q So, he told you that he was not high on glue at the time?

"A Right.

\*    \*    \*    \*    \*    \*

"Q Now, Officer Johnson, I don't want to misstate this, but you have indicated previously that at the Police Station after this confession, State's Exhibit # 6, was given to you that in a conversation with this Defendant he stated that at the time he struck this child he was not under the influence of anything?

"A Yes, sir, he did."

Appellant's counsel elicited from defense witnesses Dr. Rickman and Dr. Day:

"Q All right. Would you assume that Marty, at that point in time, would have any kind of rational con-control over his acts in what he did to the child?

"A Having gone that far, very likely not.

"Q Doctor, in your opinion do you have an opinion as to whether or not Marty Lovell would have done it had it not been for the glue?

"A My opinion is that it would have been far less likely. Of course, I can't state with certainty either way.

\*    \*    \*    \*    \*    \*

"Q  All right . . . what I'm trying to get at . . . at the time the child was struck, is whether or not Marty was under the influence of drugs or not could . . ."

Mr. Day in reading his report to the Juvenile Court testified as to statements appellant had made to him.

"He has one older brother, age twenty-six, and that he and his wife were sniffing glue at the time—sniffing glue and that he didn't know what he was doing when—that he was another person when he spanked his baby."

On direct examination, Dr. Day testified:

"Q  Doctor, do you have an opinion as to whether or not, if you assume that he had been sniffing glue at the time—prior to the time that he struck the child, whether or not the act of sniffing glue, or the effect of sniffing the glue would lessen what control he did have?

"A  Yes."

■ The above statements are not tantamount to testimony of the same facts and details found in the confession. It should be clear that the general waiver rule is based on the introduction of other evidence *of the same facts* without objection and not merely the introduction of some evidence on the same subject. Here the questions and testimony are directed to the appellant's state of mind, his use or non-use of glue or drugs, a fact not mentioned anywhere in the confession. The questions for the most part would admit appellant struck the child, but the confession relates several instances of the child being struck over a three day period. It was appellant's attempt to meet, explain and destroy the erroneously admitted evidence to rebut its incriminating effect. Under such circumstances there is no waiver of objection to the erroneously admitted evidence. *Nicholas v. State, supra*; *Alvarez v. State, supra.*

The judgment is reversed and the cause remanded.

Opinion approved by the Court.

DOUGLAS, Judge (concurring).

The majority is correct in that part of the opinion which holds that the confession of the juvenile without the aid of counsel is inadmissible. Also correct is that part of the opinion which shows testimony elicited by appellant's counsel is not tantamount to the same facts and details found in the confession. The rest of the opinion about introducing evidence to combat illegally introduced evidence is unnecessary to the opinion and is dictum.

ROBERTS, Judge (concurring).

I concur in the opinion of the Court which I reluctantly agree correctly states the law applicable to this case. I only wish to add a few comments on the status of married juveniles in Texas.

In the case at bar, appellant was protected as a "child" under V.T.C.A., Family Code, Sec. 51.09(1). Yet it was also shown that he was married at the time of the offense. V.T.C.A., Family Code, Sec. 4.03 provides:

"Except as expressly provided by statute or by the constitution, every person *who has been married* in accordance with the law of this state, regardless of age, has the power and capacity of an adult . . ." (Emphasis added)

This provision has been given broad effect. See, for example, *Ex Parte Williams*, 420 S.W.2d 135 (Tex.1967) construing V.A.C.S., Art. 4625, a predecessor of Sec. 4.03. But it has been interpreted to have no bearing upon the question of crimes committed by juvenile delinquents. See Op.Atty.Gen., 1947, V–77. Sec. 51.09 is, of course, a more recently enacted and specific exception to Sec. 4.03.

It should also be noted that V.T.C.A., Probate Code, Sec. 3(t) defines "minors" in the following way:

" . . . all persons under twenty-one years of age *who have never been married,* except persons under that age whose disabilities have been removed generally, except as to the right to vote, in accordance with the laws of this State." (Emphasis added)

*Pittman v. Time Securities,* 301 S.W.2d 521 (Tex.Civ.App., San Antonio, 1957, no writ history) held that Sec. 3(t), *supra,* had general application and that males under twenty-one who were married were adults for all purposes, not just for purposes of the Probate Code. *Pittman* was followed by *Ward v. Lavy,* 314 S.W.2d 381 (Tex.Civ.App., Eastland, 1958, no writ) and *Travelers Indemnity Co. v. Mattox,* 345 S.W.2d 290 (Tex.Civ.App., Texarkana, 1961, err. ref'd, n. r. e.). Art. 5923b, V.A.C.S., Acts 1973, 63rd Leg., p. 1723, ch. 626, eff. August 27, 1973 lowered the age of majority to eighteen years of age and continued the general applicability of Sec. 3(t) as held by *Pittman,* et al., Op.Atty.Gen., 1973, H–82. Art. 5923b, *supra,* was also being construed by the Attorney General when he wrote:

"Persons who are married, regardless of their age, have the status of adults." Op. Atty.Gen., 1973, H–85 (rendered August 13, 1973).

Texas thus has a broad scheme of statutory and decisional law emancipating all married "children" under the age of eighteen years, except as to the right to vote which was controlled by Art. VI, Sec. 1 of the Texas Constitution, Vernon's Ann.St. Sec. 51.09 of Title III of the Family Code appears to contain the only legislative exception to this rule in the jurisprudence of this State. I am unable to understand why the Legislature has deemed it necessary to coddle minors who otherwise enjoy the full complement of rights and responsibilities of adulthood.

I note that the 64th Legislature has wisely moved to mitigate the more extreme aspects of Sec. 51.09. It recently enacted S.B. 247 which now permits a "child" to waive his Fifth Amendment rights and confess in the absence of a lawyer. Except for a few other minor changes, S.B. 247 leaves the unique effect of Sec. 51.09 intact. And, of course, Sec. 51.09 remains as an exception to the rule that marriage emancipates a "child."

For these reasons, I concur.