**Jose Fidencio CARDENAS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–85–354–CR.

Court of Appeals of Texas, Corpus Christi.

April 23, 1987.

Hector Uribe, Brownsville, for appellant.

Ben Euresti, Jr., Dist. Atty., Brownsville, for appellee.

Before DORSEY, UTTER and SEERDEN, JJ.

## OPINION

DORSEY, Justice.

The appellant, a juvenile at the time the offense was committed, was convicted of capital murder by a jury and sentenced to life imprisonment in the Texas Department of Corrections. We affirm.

The first ground of error assails the admission of testimony by an investigating officer, Sergeant Garcia, of matters the appellant told him either orally or in a written statement.

This conviction was a result of the rape and murder of a fifteen-year-old girl, Olga Perales, by the appellant and three associates. The victim attended a party in the back yard of a friend's house on the evening of December 23, 1984. Later that evening when the only ones remaining at the party were Olga Perales and the host, Ray Amaya, the appellant and his three companions arrived and offered to give Olga a ride home. She accepted, but rather than being taken home, she was driven to a remote rural area where she was raped repeatedly and bludgeoned to death. Her body, without identification, was found the next morning, December 24, 1984, and an investigation began immediately. The body was identified late in the afternoon of December 24, and Officer Santiago Garcia, an investigator with the Cameron County Sheriff's Department, traced the victim's movements of the previous evening to Ray Amaya's house.

Officer Garcia testified that he found a party in progress at Mr. Amaya's house, on the evening of December 24, with several people drinking beer in the back yard. Officer Garcia was told by Ray Amaya that the appellant, Joe Cardenas, had given Olga Perales a ride home from Amaya's party and also that Joe Cardenas was then present in the back yard. Officer Garcia approached the appellant, Joe Cardenas, talked to him, and the appellant accompanied the officer to the police station. The officer testified that Cardenas was not under arrest at any time that evening. Officer Garcia testified that, while at the police station, the appellant told him that he had given Olga Perales a ride home and that she had been dropped off at the Azteca Building in San Benito. Cardenas was shown some polaroid photographs of the body and he gestured as if he wanted to throw up. He appeared to be nervous and upset, and he told the officer in Spanish, "I am not going to take the blame by myself." He told the officer to check with "Davis" but indicated that he did not know Davis' last name or whereabouts. The appellant further told the officer after they had left Olga off at the Azteca Building, they picked up a hitchhiker, and purchased a twelve-pack of Budweiser beer. No written statement was taken from the appellant, Cardenas, at that time. No objection was made to Officer Garcia's testimony.

Officer Garcia testified that he later learned the victim had been dating Victor Moreno, who had warned her about going over to Ray Amaya's house, apparently because of jealousy between Moreno and Amaya over Miss Perales. Officer Garcia also learned that Victor Moreno supposedly had a violent temper, had slapped a girl in the past, and had a van. A piece of foam rubber that was found at the scene of the murder is the sort often used by people who own and customize vans. Officer Garcia testified, at the time, his suspect was Victor Moreno and not Joe Cardenas.

On December 26, Officer Garcia again located Joe Cardenas at Ray Amaya's house. Also there was Davis Losada, a co-indictee of Cardenas. Officer Garcia testified that he asked Cardenas to give him a written statement. At the time the written statement was taken on the 26th, Officer Garcia testified that Cardenas was not a suspect, was not under arrest, and after the statement was taken, he was free to leave the police station, and did. When Officer Garcia was asked about the contents of the statement, the defense attorney interposed an objection to the effect that the appellant was a juvenile, was not afforded counsel, and was not warned at all of his right to have counsel appointed, nor had he been warned of his constitutional rights. The objection was overruled and Officer Garcia testified as to the contents of the statement given by the appellant on December 26. Appellant's first ground of error involves the trial court overruling this objection.

■ In his first two grounds of error appellant argues that, as a juvenile, he could not waive his constitutional rights without an attorney. Appellant relies on *Lovell v. State*, 525 S.W.2d 511 (Tex.Crim. App.1975) and Tex.Fam.Code Ann. § 51.09 (Vernon 1986) to support his argument. Section 51.09 provides that a minor may not waive his constitutional rights without his attorney also waiving those rights. *Lovell* relied on § 51.09 and held that a waiver of rights by a juvenile in the absence of his attorney was a nullity. In *Swink v. State*, 617 S.W.2d 203 (Tex.Crim.App.1981), the Court of Criminal Appeals declared that § 51.09 applies only to proceedings under Title 3 of the Family Code and not to criminal proceedings. Thus, appellant's reliance on § 51.09 and *Lovell* is misplaced.

■ The right against self-incrimination pertains to statements made while in custody. A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Cannon v. State*, 691

S.W.2d 664, 671 (Tex.Crim.App.1985). The facts of each case must be examined in light of four factors to determine whether appellant was in custody: whether probable cause to arrest existed; whether the defendant was the focus of the investigation; the subjective intent of the police; and the subjective belief of the defendant. *Turner v. State*, 685 S.W.2d 38, 42 (Tex. Crim.App.1985).

■ Officer Garcia testified that at the time the statement was taken, Victor Moreno and not Joe Cardenas was the focus of the investigation. Appellant was not a suspect, was not under arrest, and after he gave his statement appellant was free to go, and did. Officer Garcia's questions were part of a general investigation into an unsolved crime, which had not yet shifted to the accusatory or custodial stage. *See Allen v. State*, 536 S.W.2d 364, 370 (Tex. Crim.App.1976). Thus, appellant was not in custody at the time the statement was given. The trial court did not err in admitting testimony regarding appellant's statement. *Shiflet v. State*, 732 S.W.2d 622 (Tex.Crim.App.1985). Appellant's first point of error is overruled.

Appellant's second point of error contends that the trial court erred in admitting exhibits 65 (cigarette butts), 67–A and B (appellant's tennis shoes), and 67–C, D and E (photographs of appellant's tennis shoes).

Officer Garcia testified that tennis shoe prints were found at the scene of the murder and were photographed. Cigarette butts were also found at the scene near the bloodied area. On December 28, 1984, while appellant was sitting down, Officer Garcia noticed that the soles of appellant's tennis shoes had a pattern similar to the prints he had observed at the scene. Officer Garcia also observed two cigarette butts that had been smoked by appellant in an ashtray. He took both the tennis shoes and cigarette butts with appellant's permission and turned them over to the DPS laboratory for analysis.

■ Under certain circumstances, the police may seize evidence in plain view

without a warrant. Three conditions necessary to invoke the plain view exception to the warrant requirement are: the initial intrusion must be proper so that the police have the right to be where they are; discovery of evidence must be inadvertent; and it must be immediately apparent to police that they have evidence before them. *Snider v. State,* 681 S.W.2d 60 (Tex.Crim. App.1984); *Hernandez v. State,* 704 S.W.2d 488, 489–90 (Tex.App.—Corpus Christi 1986, no pet.).

In *Swink,* the defendant challenged the warrantless seizure of his tennis shoes while he was at the hospital. At the time the shoes were taken, the defendant had not been placed under arrest. The blood-stained shoes were in open view in the hospital room and were given to the police after the defendant consented to it. The court held that the shoes were lawfully seized under the plain view doctrine, and properly admitted into evidence. *Swink v. State,* 617 S.W.2d at 210.

■ There is nothing in the record to indicate where and under what circumstances this conversation and observation by Officer Garcia occurred. It appears that the discovery of the similarity in the soles of appellant's tennis shoes was inadvertent and that Officer Garcia was immediately aware that he had evidence before him. We find that Officer Garcia's seizure of the tennis shoes and cigarette butts as lawful under the plain view doctrine.

■ However, even if the shoes had not been properly admitted, we cannot say that the appellant was harmed by the evidence. *See Becknell v. State,* 720 S.W.2d 526 (Tex. Crim.App.1986) (not yet published); *Bird v. State,* 692 S.W.2d 65 (Tex.Crim.App.1985). There was expert testimony that a small quantity of human blood was found on the shoes; however, there was not enough to allow the blood to be analyzed and "typed." There was testimony that the shoes were seized because the pattern on the soles appeared to be similar to prints found at the scene; however, the shoes were never matched to any prints found at the scene. No actual comparisons of the soles were ever testified to.

■ Regarding the admission of the cigarette butts, once again, we fail to find any harm in their admission, even if the admission had been error. The expert testimony showed that appellant had type "O" antigen and was a "secretor"; however, this evidence was not inculpatory in that no connection was made between appellant and the crime scene, victim, or crime as a result of the exhibit complained of.

On the other hand, the testimony of accomplice Rafael Leyva placed appellant at the scene, as did the proof that appellant's hair was found clutched in the victim's hand, and the fact that the victim's pubic hair was found in appellant's car. The trial court did not err in admitting exhibits 65, 67–A and B, and 67–C, D and E. Appellant's second point of error is overruled.

In view of the overwhelming evidence of appellant's guilt apart from that complained of in points one and two, the conversations with Sgt. Garcia and the various pieces of physical evidence, any error in the admission of such evidence was harmless and did not contribute to his conviction. Tex.R.App.P. 81(b)(2).

Appellant's third point of error complains of the admission into evidence of exhibits 101 (blood sample), 102 (a controlled gauze sample) and 103 (saliva sample) which were taken from appellant while he was in custody, without a warrant or appellant's consent.

■ When these exhibits were offered by the State, appellant specifically stated that he had no objection to their admission. Failure to object or otherwise apprise the trial court of the claim waives error. *Russell v. State,* 665 S.W.2d 771, 777–78 (Tex. Crim.App.1983). Appellant's third point of error is overruled.

By his fourth and final point of error, appellant complains of the trial court's ruling that appellant's cross-examination was argumentative. Appellant alleges that by this ruling the trial court prevented appellant from pursuing his line of questioning.

Norma Villarreal was called by the State. She lived with Davis Losada, a participant

**144**

in the murder and cousin of the appellant. She testified that she visited the appellant while he was in jail awaiting trial for the murder of Olga Perales. In response to the State's inquiry "Did he tell you what happened to Olga Lydia Perales on that day?", Ms. Villarreal stated, "They had raped her." Upon further questioning on direct examination, Ms. Villarreal testified that the appellant told her in that conversation certain details of the rape and murder of Miss Perales, including the actions of several of the participants, Davis Losada, Jesse Romero, and Rafael Leyva. Ms. Villarreal stated that the appellant did not tell her what he had done, and in particular, that he did not tell her that he had hit or raped Miss Perales.

Appellant's cross-examination of Norma Villarreal was as follows:

BY MR. URIBE:

Q: Do you know the difference between "they" and "we"?

A. No.

Q. You know, this is we and that's they. If Joe said they raped her it's different than if he said we raped her.

MR. MOSBACKER: Your Honor, I'd object to this argument.

THE COURT: That is argumentative, Counsel. Just ask questions.

MR. URIBE: I have no questions, Your Honor.

THE COURT: Thank you. You may step down.

The court did not prevent appellant from cross-examining the witness. Moreover, appellant has failed to file a Bill of Exceptions showing what testimony would have been elicited. Absent a showing of what such excluded testimony would have been, nothing is presented for review. *Easterling v. State*, 710 S.W.2d 569, 575 (Tex.Crim.App.1986); *Stewart v. State*, 686 S.W.2d 118, 122 (Tex.Crim.App.1984). Appellant's fourth point of error is overruled.

The judgment of the trial court is affirmed.