COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| DANIEL SILVA HERNANDEZ, | | No. 08-06-00223-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 409th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | TC # 72468 (930D11150) |
| | § | |

**O P I N I O N**

Daniel Silva Hernandez appeals his conviction of murder. The jury assessed punishment at twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. For the following reasons, we reform the judgment and affirm it as reformed.

**FACTUAL SUMMARY**

Around 8 p.m. on May 14, 1993, Enoc Martinez and his brother Josue Martinez were visiting friends in El Paso. The Martinezes previously lived in El Paso but had moved to Florida. Enoc and Josue were hanging out with Jose Luis Hernandez, Ricardo Contreras de la Rosa, and Ricardo's cousin, Jose Contreras when they were confronted by members of the Crips gang in an alley. Ricardo testified he, Josue, Enoc, and Jose were members of the Fourth Street Gang and were rivals of the Little Crips. Ricardo, Josue, and Jose all testified they recognized Appellant and saw him pull out a gun. Josue, Ricardo, and Jose moved away but, Enoc hid behind an electrical pole. Appellant fatally shot Enoc near his left eye and then ran down the alley to his home where he was arrested. Enoc was fourteen years old and Appellant was fifteen.

On May 15, 1993, at 12:15 a.m., Detective Tony Tabullo contacted Appellant who was at the Youth Services Division. Tabullo read him his *Miranda* rights and asked if he were willing to give a statement. Beause he did not have a juvenile warning card, Tabullo read from the adult warning card. According to Tabullo, Appellant consented to giving a statement. Tabullo took him first to an intake officer at the juvenile probation department and then to Magistrate Judge Olson. Olson met with Appellant outside the presence of the detective and reviewed Appellant' rights.

Tabullo and Appellant returned to the Youth Services Division where Appellant proceeded to give a statement. He read it, made some changes, but did not sign it. Detective Tabullo explained that after taking a juvenile's statement, the next step is to take the juvenile and the statement back to the magistrate so the juvenile can sign his statement in the presence of the judge.

Appellant failed to appear for a jury trial set on October 2, 1995. On June 28, 2005, Officer Brian Melson of the Chicago Police Department Fugitive Apprehension Unit arrested Appellant who was using the name Cesar Hernandez. Officer Melson learned of the murder warrant through a fingerprint analysis conducted on Cesar Hernandez.

Appellant brings raises two issues for review. In the first, he challenges the sufficiency of the evidence to support his conviction. In the second, he complains that the trial court erred in denying his motion to suppress in violation of Section 51.09 of the Texas Family Code, Articles 38.21 and 38.22 of the Texas Code of Criminal Procedure, the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article 1, Sections 10 and 19 of the Texas Constitution.[1]

---

[1] Although Appellant contends the trial court erred in denying his amended motion to suppress his confessions or statements in violation of Section 51.09 of the Texas Family Code, Articles 38.21 and 38.22 of the Texas Code of Criminal Procedure, the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article 1, Sections 10 and 19 of the Texas Constitution, he only specifically addresses the court's violation in relation to Section 51.09 of the Texas Family Code. Because his arguments and citations only relate to Section 51.09, errors regarding Articles 38.21 and 38.22 of the Texas Code of Criminal Procedure, the Fifth, Sixth, and Fourteenth Amendments to the

**SUFFICIENCY OF THE EVIDENCE**

Appellant contends that because the State failed to produce an eyewitness who was not biased, inconsistent, or incompetent, the evidence was insufficient to link him to the crime.

**<u>Standards of Review</u>**

In reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict and determine whether a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13, *citing Jackson*, 443 U.S. at 318-19, 99 S.Ct. 2781.

In reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In performing our review, we are to give due deference to the fact finder's determinations. *See id.* at 8-9; *Clewis*, 922 S.W.2d at 136. The fact finder is the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony." *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Evidence is factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand, or the finding of guilt is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Thus, the question we must consider in conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and against the

United States Constitution, and Article 1, Sections 10 and 19 of the Texas Constitution are waived. *See* Tex.R.App.P. 38.1(h).

finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *See id.*

Under the first prong of *Johnson*, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of *Johnson*, we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson*, we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.*

## The Crime of Murder

A person commits the offense of murder if he: (1) intentionally or knowingly causes the death of an individual or (2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX.PENAL CODE ANN. § 19.02 (b)(1) & (2)(Vernon 2003). The jury was charged:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 14th day of May 1993 in El Paso County, Texas the Defendant, DANIEL SILVA HERNANDEZ, did then and there unlawfully, intentionally or knowingly cause the death of an individual namely, ENOC MARTINEZ by shooting ENOC MARTINEZ with a firearm, and said Defendant did use or exhibit a deadly weapon, to wit: a firearm, during the commission of the felony offense.
>
> OR
>
> did then and there, unlawfully, intending to cause serious bodily injury to an individual, namely, ENOC MARTINEZ, intentionally or knowingly commit an act clearly dangerous to human life, to wit: shooting ENOC MARTINEZ with a firearm, thereby causing the death of said ENOC MARTINEZ, and said Defendant did use or

exhibit a deadly weapon, to wit: a firearm, during the commission of the felony offense.

then you shall find the Defendant guilty of MURDER as charged in the Indictment. (Verdict Form A).

The jury found Appellant guilty as charged in the indictment.[2]

Because alternate theories of committing the same offense were submitted to the jury in the disjunctive, it was appropriate for the jury to return a general verdict if the evidence was sufficient to support a finding under any of the theories submitted. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App. 1991). We will affirm the jury's verdict if the evidence is sufficient to support any one of the theories charged. *See Sorto v. State,* 173 S.W.3d 469, 472 (Tex.Crim.App. 2005)(because the trial court's charge authorized the jury to convict on alternative theories, the verdict of guilt will be upheld if the evidence was sufficient on any one of the theories).

At trial, Ricardo and Josue identified Appellant as the shooter. Jose testified he saw

---

[2] The indictment read in relevant part:

Count I

DANIEL SILVA HERNANDEZ . . . did then and there unlawfully, intentionally and knowingly cause the death of an individual, ENOC MARTINEZ, by shooting ENOC MARTINEZ with a firearm.

Count II

DANIEL SILVA HERNANDEZ . . . did then an there unlawfully, intending to cause serious bodily injury to an individual, ENOC MARTINEZ, intentionally and knowingly commit an act clearly dangerous to human life, to-wit: shooting ENOC MARTINEZ with a firearm, thereby causing the death of the said ENOC MARTINEZ.

The trial court's *nunc pro tunc* judgment also lists the offense as, "Count I-II: MURDER (TPC 19.02)." "When the State wishes to charge multiple offenses in a single indictment, it is required by statute to set out each separate offense in a separate 'count.'" *Martinez v. State*, 225 S.W.3d 550, 554 (Tex.Crim.App. 2007), *citing* Tex.Code Crim.Proc. art. 21.24(a). Separate "paragraphs" within a single count may allege different methods of committing the same offense. *Id. citing* Article 21.24(b). Thus, a "count" is used to charge the offense itself and a "paragraph" is that portion of a count which alleges the method of committing the offense. *Owens v. State*, 96 S.W.3d 668, 673 (Tex.App.--Austin 2003, no pet.). "However, the substance of the allegation determines its character as a 'count' or a 'paragraph,' not the terminology used." *Id.* Although the State lists two "counts" in the indictment, the State was merely describing the alleged methods Appellant used in committing the offense of murder. Because the indictment should have stated the term "paragraph(s)" as opposed to "count(s)," we reform the judgment to reflect the offense of "Murder (TPC 19.02)." *See* TEX.R.APP.P. 43.2(b).

Appellant holding the rifle thirty seconds prior to hearing the gunshot. Appellant contends the cumulative testimony of all three witnesses is insufficient to support his conviction since they were conflicting at best.

Appellant recounts that Ricardo could not remember what kind of gun was used, had used drugs in the past, and blamed inconsistencies between his statement and testimony on his prior drug use. Jose's statement to the police recites that he saw Appellant shoot Enoc but he testified at trial that he did not witness the shooting because he was running away. Josue admitted that he suffered from depression and schizophrenia. He claimed his written statement was different from his trial testimony because the police had typed his statement and would not let him correct it.

Appellant also contends the scientific testing did not match him to the crime. Juan Rojas, a forensic chemist for the Department of Public Safety, testified about a report analysis conducted on Appellant to determine the presence of gunshot residue on his hands. The report tested for three chemicals in gunpowder: lead, barium, and antimony. They were unable to identify antimony in sufficient quantity to establish the presence of primer gunshot residue. Detective Gerald Humphrey testified the bullet retrieved from Enoc's body was not fired from the recovered weapon. No fingerprints were found on the weapon, and although five latent prints were found on the plastic bag in which the gun was found, none was of evidentiary value.

We conclude the evidence was sufficient. First, although there were inconsistencies in the testimony of Ricardo, Jose, and Josue, the resolution of these inconsistencies lies with the trier of fact. *See Chambers*, 805 S.W.2d at 461 (the fact finder is the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony"); *Hooper,* 214 S.W.3d at 13, *citing Jackson,* 443 U.S. at 318-19 (we must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to

ultimate facts").

Secondly, Appellant admitted that he shot Enoc:

On May 14th of 1993, about 8:00 p.m., I was with three other guys. They were Mi Nino, El Liro and El Goofy. We went down the alley towards Father Rahm Street. I already had a gun with me. I had a .22 caliber cutoff rifle. The rifle was given to me earlier by a gang member of the Too Black Gang. I don't know the guy's name or know where he lives. This guy gave me the rifle to keep for him. I had the cutoff rifle stuck under my waistband. Well, we got to about the Father Rahm Street, and some guys from the Fourth Street Gang saw us. They came over to us and were yelling out their gang name. We did the same. They came at us and we went down -- back down the alley. One of their guys hid in back of a light pole. By this time, I had taken out the rifle and pointed it at the light pole. When I shot the rifle, the guy behind the pole look out and I shot him. All I saw was him by the light pole because after that we took off running. This is all I did that night.

Third, even though the scientific evidence did not specifically link Appellant to the murder weapon or bullet, the analyses conducted on the gun powder residue, the bullet, and the fingerprints were inconclusive.[3] *See Hooper,* 214 S.W.3d at 13 (we must give deference to the trier of fact's responsibility to weigh the evidence). The evidence also established that after the shooting, Appellant fled the scene. He failed to appear at his trial in 1995 and was later found in Chicago using a different name. *See Clayton v. State*, 235 S.W.3d 772, 780 (Tex.Crim.App. 2007)(a fact finder may draw an inference of guilt from the circumstance of flight).

Reviewing the evidence in the light most favorable to the verdict, the evidence was legally sufficient to support the jury's finding that Appellant intentionally or knowingly committed an act clearly dangerous to human life by shooting Enoc with a firearm, thereby causing his death. *See*

---

[3] The report analysis from the Texas Department of Public Safety regarding the hand swabs taken from Appellant indicated they were "unable to identify antimony in sufficient quantities to establish the presence of primer gunshot residues on hand swabs." Juan Rojas testified the results indicated the person had not recently fired a weapon or been in the immediate proximity of where a weapon was fired. He also explained his conclusion that no antimony was present in the ammunition; gunshot residues were deposited but were removed by some means of human activity, such as, sweating or washing of hands; and, depending on the weapon, some do not leave deposits. The ballistics report indicated the Department of Public Safety was "unable to determine if the submitted projectile was fired from the submitted weapon." Bruce Orndorf, a latent print examiner, testified he received five prints to analyze but none was of evidentiary value. The prints did not contain any characteristics and ridge flow to establish a positive identification.

*Sorto*, 173 S.W.3d at 472 (the verdict of guilt will be upheld if the evidence was sufficient on any one of the theories). Reviewing the evidence in a neutral light, the evidence of Appellant's guilt was not so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand, nor was the finding of guilt against the great weight and preponderance of the available evidence. *See Johnson*, 23 S.W.3d at 11. We overrule the first issue for review.

## MOTION TO SUPPRESS

Appellant contends the trial court erred in denying his motion to suppress since he did not have an attorney present when he waived his rights and the State failed to prove he had been afforded counsel at the time he gave his statement. He also argues there was no evidence that his rights were read to him by the magistrate and that he knowingly and voluntarily waived them in the magistrate's presence.

The trial court issued the following relevant findings of fact:

1      That on May 15, 1993, the Defendant, who was a 15 year old juvenile, was taken into custody and taken before a Magistrate for his juvenile warnings outside the presence of Detective Tabullo.

2      That while the Defendant was with the Magistrate he was warned that he had the right to remain silent and that any statement he made could and probably would be used against him, that he had the right to consult with an attorney and the right to terminate the interview at any time, if he was 15 years of age or older at the time of the violation of a penal law of the grade of felony, the juvenile court may waive its jurisdiction and he may be tried as an adult, that he may be sentenced to commitment in the Texas Youth Commission with a transfer to the Institutional Division of the Texas Department of Criminal Justice for a term not to exceed 40 years if you are found to have engaged in delinquent conduct alleged in a petition approved by a grand jury which alleges the commission of one or more of the following offenses, to wit:  Murder, Capital Murder, Aggravated Kidnapping, Aggravated Sexual Assault, Deadly Assault on a Law Enforcement Officer, Corrections Officer, or court participant, or criminal attempt if the offense attempted was Capital Murder.

3      That prior to giving the written statement, the Defendant signed theses Juvenile warnings in front of the Magistrate outside of the presence of Detective Tabullo.

4	That the face of the written statement of Daniel Hernandez, signed on May 15, 1993, also contains the Juvenile warnings.

5	That prior to giving any and during any all oral and written statements, Daniel Hernandez intelligently, knowingly and voluntarily waived the rights given to him under the United States and Texas Constitutions and the Texas Family Code.

.	.	.

10	That the decision by Daniel Hernandez to give the written statement was not influenced by any factor other than his desire to give said statement.

11	That at no time did Daniel Hernandez request the presence of counsel.

12	That at no time did Daniel Hernandez request to terminate the interview.

13	That Daniel Hernandez had the opportunity to review and make changes to his statement.

14	That Daniel Hernandez signed said statement in the presence of the Magistrate outside of the presence of Detective Tabullo.

15	That the Magistrate signed the Magistrates Certification of Juvenile's Competency to Make Statement indicating that the Juvenile understands the nature and contents of his statement and has knowingly, intelligently, and voluntarily waived those rights.

**Standard of Review**

We review a trial court's ruling on a motion to suppress using the bifurcated standard of review articulated in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Krug v. State*, 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref'd). Because the trial judge is the sole trier of fact regarding credibility and weight to be given to a witness's testimony, we do not engage in our own factual review of the trial court's decision. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). Almost total deference is given to the trial court's ruling on questions of historical fact and application of law to fact questions that turn on an evaluation of

credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex.Crim.App. 2006), *citing Guzman*, 955 S.W.2d at 89. A trial court's rulings on mixed questions of law and fact that do not turn on the credibility and demeanor of witnesses are reviewed *de novo*. *Id.*

Where, as here, the trial court files findings of fact and conclusions of law, the court's findings will not be disturbed on appeal absent an abuse of discretion. *State v. Wood*, 828 S.W.2d 471, 474 (Tex.App.--El Paso 1992, no writ); *see also Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App. 1991)(trial court's findings should not be disturbed absent clear abuse of discretion). If the court's findings are supported by the record, then we are not at liberty to disturb them, and we will only address the question of whether the trial court improperly applied the law to the facts. *Wood*, 828 S.W.2d at 474. A court's ruling regarding a motion to suppress will be upheld if the decision made was based on any correct theory of law applicable to the case. *Ross*, 32 S.W.3d at 856.

*Aid, Advice, or Presence of Counsel*

Appellant argues the trial court erred in denying his motion to suppress because the State failed to introduce evidence that he had been afforded counsel at the time his statement was taken. He relies upon *Lovell v. State* wherein the Court of Criminal Appeals held a juvenile's written confession and waiver of rights obtained without an attorney's presence violated Section 51.09 of the Texas Family Code. *Lovell v. State*, 525 S.W.2d 511, 514-15 (Tex.Crim.App. 1975). His reliance is misplaced. Section 51.09 of the Family Code has been amended to permit a juvenile to waive his rights without the presence of counsel.[4] *Comer v. State*, 776 S.W.2d 191, 195 (Tex.Crim.App. 1989)(the original version of the Family Code as enacted in 1973 required the

---

[4] *Lovell v. State* was decided, on July 23, 1975, prior to the effective date of Section 51.09 amendment, on September 1, 1975, which included Section (b). *See* Act 1973, 63rd Leg., ch. 544, 1973 TEX.GEN.LAWS 1460,1464, *amended by* Act 1975, 64th Leg., ch. 693, 1975 TEX.GEN.LAWS 2152, 2154.

concurrence of an attorney before a child could validly waive his rights, however, the very next legislature amended Section 51.09 by adding subsection (b) to remove the privilege against self incrimination from among those legal rights for which a juvenile needs the concurrence of counsel to waive), *citing* Acts 1975, 64th Leg., p. 2154, ch. 693, § 9, eff. Sept. 1, 1975; *B.L.C. v. State*, 543 S.W.2d 151, 152-53 (Tex.Civ.App.--Houston [14th Dist.] 1976, writ ref'd n.r.e.)("The addition of subsection (b) allows a juvenile to waive his rights without the presence of counsel or parent, thus changing the previous requirement of the statute.").  The holding in *Lovell v. State* is thus inapplicable.

*Evidence Indicating Rights Were Read*

Appellant next argues there was no evidence to indicate his rights were read to him by the magistrate and that he knowingly and voluntarily waived them in the magistrate's presence. He further complains of discrepancies in the signatures on the adult warning card and contends the warnings were insufficient to render his statement admissible.

The State introduced the testimony of Detective Tony Tabullo and provided copies of the "Statutory Warning of Juvenile By Magistrate Under Section 51.09 of the Texas Family Code as Amended September 1, 1991," "Juvenile Confession Warning," "Magistrates Certification of Juvenile's Competency to Make Statement," and a copy of Appellant's signed *Miranda* card. By the time of the suppression hearing, the magistrate judge, W.F. Olson, had passed away.

Detective Tabullo testified he contacted Appellant at the Youth Services Division at 12:15 a.m. He read all of the warnings on a *Miranda* card and had Appellant read them out loud. The warnings were based upon the adult card because he didn't have the juvenile card with him. Appellant signed the card. The detective did not question him. Next, Detective Tabullo took Appellant to the juvenile probation division where he met with an intake officer and then to Judge Olson to be advised of his rights. The detective gave the judge a form entitled, " Statutory Warning of Juvenile By Magistrate Under Section 51.09 of the Texas Family Code as Amended September 1, 1991." The form indicated Appellant was accused of the offense of murder, listed the statutory rights, and included the following:

> I do not want to consult with a lawyer before I make this statement, and I do not want to remain silent, and I now freely and voluntarily waive my right to a lawyer and to remain silent and I now knowingly make the following voluntary statement.

Appellant met with Judge Olson around 2:00 a.m. Detective Tabullo was not present. When the two returned, Judge Olson gave the form back to Detective Tabullo. It contained Appellant's

signature as "Affiant" and Judge Olson's signature. Judge Olson also did not mention to Detective Tabullo that Appellant was unwilling to talk to him.

Detective Tabullo then took Appellant back to the Youth Services Division where he took his statement. The form was entitled, "Juvenile Confession Warning." The first page provided the warnings and the date and time the statement was given, and the second page contained the statement itself. After completing his statement, Appellant reviewed it and made corrections. At that point, Detective Tabullo took Appellant back to Judge Olson. The judge reviewed the statement with Appellant and Appellant signed the statement in the judge's presence and outside the presence of Detective Tabullo. Once Judge Olson reviewed the statement with Appellant, he gave Detective Tabullo the signed form that included his signature on the first page and Appellant's signature on the second page beneath his confession. Judge Olson also gave Detective Tabullo the "Magistrate's Certificate of Juvenile's Competency to Make Statement:"

> I have examined, Daniel Hernandez, independent of any law enforcement officer or prosecuting attorney and have determined that the child understands the nature and contents of his statement and has knowingly, intelligently and voluntarily waived those rights specified on page one of this document. I am fully convinced that Daniel Hernandez understands the nature and content of his/her statement and I am fully convinced he signed every page of his/her statement voluntarily.

We find no error in the denial of the motion to suppress. The forms signed by Judge Olson compliled with Texas Family Code Section 51.09. Appellant received statutory warnings from the magistrate; the statement was signed in the presence of a magistrate with no law enforcement officer or prosecuting attorney present; and the magistrate signed a written statement verifying the foregoing requisites were met. *See* Act 1975, 64th Leg., ch. 693, 1975 TEX.GEN.LAWS 2152, 2154 (amended 1989 & 1991)(current versions at TEX.FAM.CODE ANN. §§ 51.09 & 51.095 (Vernon 2002 & Supp. 2007). We overrule Issue Two. We reform the judgment to reflect the offense of "Murder (TPC

19.02),” and  affirm the judgment as reformed.  *See* TEX.R.APP.P. 43.2(b).


June 12, 2008

                                        ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)