**Allen Ray CARTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 857–82.**

Court of Criminal Appeals of Texas, En Banc.

April 13, 1983.

Allen C. Isbell, on appeal only, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Winston E. Cochran, Jr. and Rusty Hardin, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TOM G. DAVIS, Judge.

Trial was before the jury upon appellant's plea of not guilty of capital murder. V.T.C.A. Penal Code, Sec. 19.03(a)(2). After the jury found appellant, a juvenile, guilty, the court assessed punishment at life. The conviction was affirmed by the Court of Appeals for the Fourteenth Supreme Judicial District. We granted appellant's petition for discretionary review in order to examine the Court of Appeals' holding that the magistrate's certification complied with the provisions of V.T.C.A. Family Code, Sec. 51.09.

Appellant was convicted of intentionally causing the death of Michael Underwood by beating, hitting, and striking him with a shotgun in the course of committing aggravated kidnapping and aggravated robbery against Underwood, and aggravated rape against K____ B____.

Appellant contends that his written confession was improperly admitted into evidence in that the magistrate's certification did not comply with the provisions of Sec. 51.09, supra.[1]

Sec. 51.09, supra, reads in pertinent part:

"(b) Notwithstanding any of the provisions of Subsection (a) of this section, the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:

"(1) When the child is in a detention facility or other place of confinement or in the custody of an officer, the statement is made in writing and the statement shows that the child has at some time prior to the making thereof received from a magistrate a warning that:

"(A) he may remain silent and not make any statement at all and that any statement he makes may be used in evidence against him;

"(B) he has the right to have an attorney present to advise him either prior to any questioning or during the questioning;

"(C) if he is unable to employ an attorney, he has the right to have an attorney to counsel with him prior to or during any interviews with peace officers or attorneys representing the state;

"(D) he has the right to terminate the interview at any time;

"(E) if he is 15 years of age or older at the time of the violation of a penal law of the grade of felony the juvenile

court may waive its jurisdiction and he may be tried as an adult; and

"(F) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present. The magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing the same voluntarily. If such a statement is taken, the magistrate shall sign a written statement verifying the foregoing requisites have been met.

"The child must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement and sign the statement in the presence of a magistrate who must certify that he has examined the child independent of any law enforcement officer or prosecuting attorney and determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights."

Appellant, a juvenile at the time, was taken before Magistrate Joe L. Draughn on April 12, 1978. Judge Draughn gave appellant the warnings required under Sec. 51.09, supra.

Appellant then made a confession to police officers. The confession was typed, but before appellant signed it, he was taken before Magistrate Henry E. Doyle. Judge Doyle examined appellant apart from police officers and prosecuting attorneys. Appellant signed the confession in Judge Doyle's presence. Judge Doyle's certification states:

"This statement was signed by Allen Ray Carter, Jr. in my presence on the 12th day of April, 1978, at 11:15 o'clock A.M., at which time no law enforcement officer or prosecution attorney was present. I am fully convinced that this person understands the nature and contents of this

---

1. Sec. 51.09, supra, prevails as an exception to Art. 38.22, V.A.C.C.P., where applicable. *Lo-* *vell v. State,* 525 S.W.2d 511 (Tex.Cr.App. 1975).

statement, and further, that this person is signing this statement voluntarily.

Henry E. Doyle
Magistrate
April 12, 1978"

Appellant's signed confession, the statutory warnings, and the magistrate's certification were all on one sheet of paper which was admitted as State's Exhibit Number 43.

The magistrate's certification is virtually a verbatim reproduction of the language in Subsection (F), but omits the certification required by the subsequent paragraph.

In addition to Exhibit 43, Judge Doyle identified Exhibit 42 which was admitted into evidence by the trial court. Judge Doyle testified as follows regarding this exhibit.

"A. ... then I took this form and this form says that 'On this date Allen Ray Carter, Jr.', and it shows his race to be N, sex to be M, age to be 16, 'personally appeared before me in the custody of J.T. Gonzalez, a peace officer of the City of Houston Police Department, Harris County, Texas, and I, Henry E. Doyle, the undersigned Magistrate, gave the said arrested person the statutory warning required by Section 5109 of the Texas Family Code, Title 3. I hereby certify I have examined Allen Ray Carter, Jr., out of the presence of and independently of any law enforcement officer or any prosecuting attorney and have determined that this person understands the nature and content of the statement and has knowingly and voluntarily waived his statutory rights.' And I signed by name, 'Henry E. Doyle' before the line that says 'Magistrate' and put the date on it, 'April 12th, 1978', and the time, '11:15 a.m.'. Also on the bottom of this same statement in my own handwriting I wrote the following: 'I talked with Allen Ray

Carter, Jr. I, based upon his responses to general and specific questions about his activities and background, I believe he is fully competent to make the confession which he, this day, signed in my presence' and I signed that with my initials, 'H.E.D.' "

Apparently the Court of Appeals did not take into account this additional certification which was read into the record by Judge Doyle. When the magistrate's certificate in Exhibit 43 is coupled with the additional certificate read from Exhibit 42, we find only one required word missing from the certification paragraphs. The finding that appellant has "intelligently" waived his rights is missing.

The adjectives *knowing* and *intelligent* are often defined as being synonymous. It is also true, however, that the word intelligence sometimes denotes a higher degree of mental capacity than does the word knowledge. For example, Webster's New Collegiate Dictionary (1979) defines intelligence as, "the ability to *apply knowledge* to manipulate one's environment."

In *Grayson v. State,* 438 S.W.2d 553, 555 (Tex.Cr.App.1969), the defendant contended that he was incapable of intelligently waiving his right against self-incrimination and right to counsel. A competency hearing had been held at which the defendant was found competent to stand trial. This Court stated:

"It is difficult to see how one accused of crime may lack sufficient intelligence to waive his right against self-incrimination and to counsel, yet be competent to stand trial; to understand the nature of the charge against him and to assist his counsel in preparing a rational defense."

Here, the magistrate certified that after an extensive examination he found the appellant fully competent to make a confession. He also certified that appellant knowingly waived his statutory rights. These two findings complied with the re-

quirement that the magistrate certify an intelligent waiver of rights. Thus, Exhibits 42 and 43 when considered together show compliance with the certification provisions of Sec. 51.09, supra.

The judgment of the Court of Appeals is affirmed.

TEAGUE, J., concurs in result.

CLINTON, Judge, concurring.

The Houston (14th) Court of Appeals remarks that V.T.C.A. Family Code, § 51.-09(b)(1) "could be better drafted to specify the requirements of the certification," and also suggests "the better practice ... [is] ... for magistrates to place in a certification *all requirements, however, redundant, from both directives*." [1] I offer an explanation of how subsection (b)(1) originated and developed to the end that legislative purpose may be understood and its effect realistically determined.

Acts 1975, 64th Leg., p. 2154, ch. 693, § 9 of which became § 51.09(b)(1), began its passage through the Legislature as an act proposed by both House Bill 805 by Representative Maloney and Senate Bill 247 by Senator Farabee. The bill moved first in the Senate and after amendment was passed over to the House. As initially captioned, the Senate Bill did not propose to amend § 51.09 at all. See II House Journal, Regular Session, 64th Legislature 2723–2724 (hereafter "House Journal").

When SB 247 was laid before the House for second reading in lieu of HB 805, Representative Maloney offered an amendment in the nature of a complete substitute. House Journal at 2724–2729. Section 8 was to amend § 51.09 by adding a new subsection (b) paragraph (1) of which to read as set out in the margin.[2] It will be noticed immediately by one who first reads § 51.-09(a) and then compares proposed subsection (b)(1) that the latter removes the requirement of the former that a waiver of any right granted to a child by law must be made also by an attorney for the child. Thus, when the waiver is of the child's right against selfincrimination, for presence, advice and joinder of his attorney, one notion reflected in the proposed subsection (b) is that a magistrate may serve as an adequate substitute to counsel with the child regarding his rights. See Waiver of Constitutional Rights by a Juvenile, 17 South Texas L.J. 301 (1976). And, as would soon become manifest, that notion was not acceptable to many members of the House.

As soon as Representative Maloney offered his first amendment to proposed subsection (b), again in the nature of a complete substitute for the subsection,[3] Representative Washington raised a point of or-

---

**1.** All emphasis is added by the writer of this opinion unless otherwise indicated.

**2.** "*(b) Notwithstanding any of the provisions of Subsection (a) of this section, the statement of a child is admissible in evidence in any future proceeding under this title, except a hearing pursuant to Section 54.02, concerning the matter about which the statement was given if:*

"*(1) when the child is in a detention facility or other place of confinement or in the custody of an officer, the statement is made in writing and signed by the child and the statement shows that the child has at some time prior to the making thereof received from a magistrate a warning that:*

"*(A) he may remain silent and not make any statement at all and that any statement he makes may be used in evidence against him;*

"*(B) he has the right to have an attorney present to advise him either prior to any questioning or during the questioning;*

"*(C) if he is unable to employ an attorney, he has the right to have an attorney to counsel with him prior to or during any interviews with peace officers or attorneys representing the state; and*

"*(D) he has the right to terminate the interview at any time.*

"*The child must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement.*"

**3.** Actually, however, the Maloney amendment to his own original substitute only inserted after § (b)(1)(D) the following:

"(E) if he is 15 years of age or older at the time of the violation of penal law of the grade of felony the juvenile court may waive its jurisdiction and he may be tried as an adult."

der against both on the grounds that neither was germane to either SB 247 or HB 805. When that point of order was overruled by the Chair, Representative Washington then moved to strike Section 8 entirely; Maloney countered with his motion to table. On a rollcall vote the motion to table prevailed 76 Yeas to 66 Nays with 8 not voting. The Maloney amendment to his own substitute was adopted by another rollcall vote—verified this time—67 Yeas to 62 Nays with 21 not voting. House Journal at 2729–2730.

As thus adopted and passed on second reading Section 8(b) read:

*"(b) Notwithstanding any of the provisions of Subsection (a) of this section, the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:*

*"(1) when the child is in a detention facility or other place of confinement or in the custody of an officer, the statement is made in writing and the statement shows that the child has at some time prior to the making thereof received from a magistrate a warning that:*

*"(A) he may remain silent and not make any statement at all and that any statement he makes may be used in evidence against him;*

*"(B) he has the right to have an attorney present to advise him either prior to any questioning or during the questioning;*

*"(C) if he is unable to employ an attorney, he has the right to have an attorney to counsel with him prior to or during any interviews with peace officers or attorneys representing the state;*

*"(D) he has the right to terminate the interview at any time; and*

*"(E) if he is 15 years of age or older at the time of the violation of a penal law of the grade of felony the juvenile court may waive its jurisdiction and he may be tried as an adult.*

*"The child must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement.*

*"(2) it be made orally and the child makes a statement of facts or circumstances that are found to be true, which conduct tends to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed.*

*"(3) the statement was res gestae of the delinquent conduct of the conduct indicating a need for supervision or of the arrest."*

With respect to qualifying a statement of a detained child for future admission in evidence, then, the statement itself had to be in writing and show on its face that "the child has at some time prior to the making thereof received from a magistrate a warning" particularizing the matters listed from (A) through (E). Also required by subsection (b)(1)—though not in terms coupled with the face of that statement—is that the child "must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement." Thus, beyond showing a specified warning was given by a magistrate there was no requirement that the statement itself be authenticated, certified, verified or, indeed, signed by anyone, except implicitly the child. Obviously, as it passed second reading, Section 8 of SB 247 could be reasonably regarded by legislators as a severe weakening of protection of rights afforded a juvenile in this respect.

The next day SB 247 was laid before the House on its third reading for final passage. House Journal at 2801. Representative Grant promptly offered an amendment:

"Add a new Subsection after Section (E) to read as follows:

(F) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present. The magistrate must be fully convinced that the child

understands the nature and contents of the statement and that the child is signing the same voluntarily. If such a statement is taken, the magistrate shall sign a written statement verifying the foregoing requisites have been met.

After Subsection (E) add a comma and the word *and.*"

To that amendment Representative Maloney sent up an amendment, *viz:*

"Amend Grant amendment by deleting the period at the end of Section 51.-09(b)(1) and adding the following:

'*and sign the statement in the presence of a magistrate who must certify that he has examined the child independent of any law enforcement officer or prosecuting attorney and determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights.*'"

Both amendments were adopted without objection, and when the bill was finally passed and sent back to the Senate that body concurred in all House Amendments. II Senate Journal 1531.

The first rule of statutory construction is to ascertain legislative intent, for that is the law. *Anderson v. Penix,* 138 Tex. 596, 161 S.W.2d 455, 459 (1942); *Lone Star Gas Co. v. State,* 137 Tex. 279, 153 S.W.2d 681, 692 (1941); *Popham v. Patterson,* 121 Tex. 615, 51 S.W.2d 680, 683 (1932). Patently the Grant amendment is structured as part of the warning that a child must receive from a magistrate, *viz:*

"... the statement shows that the child at some time prior to the making thereof received from a magistrate a warning that:

(A) ...

(B) ...

(C) ...

(D) ...

(E) ...

(F) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present. * * *"

Yet the last sentence in (F) is a conditional mandate directed to the magistrate:

"If such a statement is taken, the magistrate shall sign a written statement verifying the foregoing requisites have been met."

Since the magistrate giving the required warning knows that he gave it, I take it that an intent of the Grant amendment is that once a written statement is taken from the child the warning magistrate must verify in writing that he gave the requisite warnings. Anyone else would present only a hearsay account of the warning.

Representative Grant accepted the Maloney amendment without objection—a clear indication that he and Representative Maloney believed their respective amendments were meant to solve different problems. Thus, intendment of the Maloney amendment depends on still another rule of statutory construction. That is, every sentence, clause, phrase and word must be given effect if reasonably possible, *Morter v. State,* 551 S.W.2d 715, 718 (Tex.Cr.App.1977) quoting from *Eddins-Walcher Butane Company v. Calvert,* 156 Tex. 587, 591, 298 S.W.2d 93, 96 (1957), the presumption being that each has been "intentionally used for the purpose of making clear the legislative intent," *Gulf, C.S.F. Ry. Co. v. Blum ISD,* 143 S.W. 353, 356 (Tex.Civ.App.—Austin, 1911, writ ref'd), and that the statute in its entirety was intended to be effective, *Lovell v. State,* 525 S.W.2d 511, 515 (Tex.Cr.App. 1975).

Coming as it does after the warning requirement has been satisfied and a statement from the child has been taken, the Maloney amendment contemplates that the child be again brought before a magistrate for a determination that the child "understands the nature and contents of the statement" he has given and "has knowingly, intelligently, and voluntarily waived [the] rights" about which he was earlier

warned—by the same or perhaps, as here, another magistrate.

In sum, the statutory scheme for taking a confession from a child outside the presence of and without concurrence from his lawyer is that he first be warned of rights by a magistrate and then, once a confession is obtained, that he sign it in front of a magistrate upon a determination that those rights were properly waived. I now turn to an examination of whether the scheme contemplated by § 51.09(b)(1) was effectuated in the case at bar.

The reason the majority opinion must excerpt from the reported testimony of Judge Henry E. Doyle what State's Exhibit No. 42 purported to relate is that the exhibit is not in the six volume record before this Court. For that matter, neither is any paper marked State's Exhibit No. 43—the confession attributed to appellant. Nor can there be found yet another exhibit mentioned in the record: State's Exhibit No. 41, offered by the State during the course of a *Jackson v. Denno* hearing in connection with a stipulation that prior testimony of

Judge Joe L. Draughn at hearing held about a year earlier may be presented to the trial judge through a reading of her notes by the court reporter.[4] In short, the most crucial papers that the Family Code mandates must predicate and authenticate a written incriminatory statement taken from a child do not appear as exhibits in this record.[5]

Though not in the *Jackson v. Denno* hearing, I have also discovered that Judge Draughn testified before the jury about his own warning to appellant prior to the confession being given and read the "form and waiver" to the jury.[6] What he read, however, does not include any part of (F)—the Grant amendment. Nor has it been shown that *after* the confession was taken, Judge Draughn signed a written statement of his own verifying the other requisites of subsection (b)(1) had been met. Thus, though appellant had not made the point, as I construe the Grant amendment the intent of § 51.09(b)(1) was not fully effectuated.

· While it too concluded the subsection contains "two directives," the court of appeals

4. At page 1632 are the following germane portions of a colloquy between the prosecutor, the defense counsel and the trial judge in that order:

"... Judge, may we have the record reflect that the Court has not heard the entire testimony of Judge Draun [sic] given in a previous hearing and to include the offer, I assume, acceptance into evidence and no objection of *the form and waiver* given by Judge Draun."

"We would have no objection to the offer other than we are objecting to the voluntariness of the statement..."

"In evidence."

"Your Honor, the State is offering State's 41, which the Court has already read..."

\*   \*   \*   \*   \*   \*

"No additional objection."

"In evidence."

5. Indeed, the record as a whole challenges the resolve of the most determined reviewer of its contents. The index dutifully provides a page number where a given paper may be found, but a description of the paper itself is rarely edifying; for example, there are several listings for "indictment," at least five for "docket sheet" and three for "petition." It appears that appel-

lant was transferred to criminal district court on four accusations of criminal conduct and that there were preliminary proceedings in one or another cause before consolidation of some of them, thereby creating much confusion about just which papers are appropriate for this record. We do not fault the decision which seems to have put them all in, but do suggest that a more definitive description of each would be helpful.

As to the transcription of the notes of the court reporter, appellant plead to the indictment at page 1448, but the only index in six volumes of statement of facts is at the beginning of Volume VI at pages 2212–2213, and it refers to witnesses and proceedings purported reported from page 18 through 323 (as best I can read it) that actually occurred toward the end of trial. As already suggested, there are *no* exhibits; although pages 2529, 2530, 2531, 2532, 2533 and 2534 indicate State's Exhibits 61, 62, 63, 64 and 65, respectively, they are otherwise totally blank. In this shape, the statement of facts is a formidable obstacle.

6. The form is entitled "Statutory Warning of a Juvenile by a Magistrate, Section 51.09 of the Texas Family Code as Amended in 1974." It was admitted without objection from appellant.

found that a statement by Judge Doyle— "Exhibit 43"—"complies with the requirements of § 51.09." As I understand the majority opinion by Judge Tom Davis, that verification is *not* enough to comply with those requirements, but when it is considered with the certification—"Exhibit 42" —together they "show compliance with the certification provisions of Sec. 51.09, supra." Obviously, I agree with the first conclusion, albeit for a different reason, but just as plainly I reject the second one.

Except for the recitation that he too gave "the statutory warning," the certification made separately by Judge Doyle comports with the Maloney amendment in every particular but for its omission of "intelligently." The majority, mistakenly in my view, equates "knowingly" and "intelligently." In the very case creating the *Miranda* warning, the Supreme Court of the United States reiterated:

"After such warnings have been given ... the individual may knowingly *and* intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

*Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966); earlier the *Miranda* Court had stated that "a heavy burden rests on the government to demonstrate that the defendant knowingly *and* intelligently waived his privilege against self-incrimination," *id.,* at 475, 86 S.Ct. at 1628. Thus, the Supreme Court requires that such a waiver be both knowingly and intelligently made. See also *Tague v. Louisiana,* 444 U.S. 469, 471, 100 S.Ct. 652, 653, 62 L.Ed.2d 622 (1980): "[N]o evidence at all was introduced to prove that petitioner *knowingly and intelligently* waived his rights before making the inculpatory statement."

Nevertheless, I conclude that in fact Judge Doyle complied with the Maloney amendment, even if his certification does omit "intelligently." At the *Jackson v. Denno* hearing he testified at length about his examining appellant through inquiries concerning appellant's background, education, and the criminal transaction for which he had been arrested; as appellant talked about the offenses, Judge Doyle followed the written account in the confession; he had appellant read it and then went over every line with appellant, explaining any matter appellant professed not to understand[7] and got appellant to confirm that recitations of factual conduct during the transaction were true; Judge Doyle then summed up the legal position appellant was in with respect to the confession.[8]

Finally, with respect to his conclusion that appellant was "competent" to make his confession, Judge Doyle affirmed that "there was [n]ever any doubt in [his] mind that [appellant] understood what [they] had been talking about and [appellant] appeared capable ... to understand exactly what the warnings were, what [he] had gone over with [appellant] and what the confession was about." Further, Judge Doyle never had "any feeling that [appellant] did not understand or he was not bright enough or sharp enough to know what was going on" during the examination conducted by Judge Doyle. At the conclusion of the *Jackson v. Denno* hearing the trial judge found, *inter alia:*

"[Y]ou are going to be asked to sign it if you say it's true. You don't have to sign it and it doesn't make me any difference whether you sign it or not because briefly I don't know you and I don't know anything about it. It doesn't make me any difference but if you do sign it and say it is true, as I previously told you, it might be used in evidence against you and so he just said I read it and I will sign it."

**7.** For instance, appellant did not know the meaning of "terminate," as in "the right to terminate the interview at any time," and was not too clear about the juvenile court's waiving its jurisdiction so that appellant may be tried as an adult.

**8.** Judge Doyle testified that at this point he told appellant:

"That the accused, prior to and ... during the making of the statement, knowingly, intentionally [sic] and voluntarily waived his rights set out in the warnings..."

For the reasons given in this opinion, therefore, I join the judgment of the Court.

MILLER, J., joins.

