Lloyd George PETREE, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–87–01326–CR.

Court of Appeals of Texas,
Dallas.

Aug. 30, 1989.
Discretionary Review Refused
Nov. 29, 1989.

Denver G. McCarty, John H. Hagler, Dallas, for appellant.

Sharon Batjer, Dallas, for appellee.

Before HOWELL, LAGARDE and WHITTINGTON, JJ.

LAGARDE, Justice.

Lloyd George Petree, a juvenile at the time of the offense, appeals his conviction for the offense of aggravated sexual assault of a child under fourteen years of age. Punishment was assessed at ten years' confinement, probated for ten years. In two points of error, appellant maintains that: (1) his written statement was not admissible since he had not been advised of his rights by a magistrate prior to the making of the statement; and (2) the evidence is insufficient to support his conviction. We overrule both points of error and affirm.

Because appellant challenges the sufficiency of the evidence in addition to the admissibility of the confession, we will review the facts of the case prior to our discussion of appellant's two points of error. Appellant, age fifteen, lived next door to the five-year-old complainant, her parents, and complainant's three siblings. During the summer of 1986, appellant was hired by complainant's parents to babysit their four children from approximately 3:00 p.m. to 6:00 p.m. while the parents were at work. On August 1, 1986, appellant babysat the four children, and when complainant's mother arrived home from work between 6:00 and 6:15 p.m., she found blood on a washcloth and on the commode. After further investigation, she discovered that complainant had on two pairs of underwear and that both had blood on them. Complainant's mother also found blood on other items of complainant's clothing. When questioned, complainant told her mother that appellant hurt her. There were fingerprint bruises on the complainant's stomach and bruises on her bottom. Because complainant's legs were soiled with blood, complainant's mother had to give her a bath in order to determine the source of the blood. Complainant's mother called the child's father at work and informed him of the situation. When complainant's father came home, he asked a neighbor, a registered nurse, to come over to look at the complainant. The nurse advised the parents to take the complainant to the hospital.

Complainant testified that appellant spanked her with a "stick" that had things "like thorns" on it. She stated that it hurt when he spanked her and that she cried. After he spanked her, he got something that she thought was a pen and got it up to her "private parts in the front." Her pants were off at the time, and it went inside her "privates." Then appellant and complainant went into the bathroom. Appellant told complainant to pull her pants down, and appellant pulled his pants down. Appellant made complainant "suck on his privates," and appellant "peed" in her mouth.

Dr. Benjamin John Rodriguez testified that he examined complainant on August 1, 1986, and that because it appeared that complainant had been sexually abused, he transferred complainant to Parkland Memorial Hospital, which is equipped to preserve the chain of evidence related to sexual abuse cases.

Dr. Norman Gant, M.D., testified that he examined complainant when she was brought to the hospital on August 1, 1986. He testified that she was bleeding rather heavily from the vagina. It was estimated that she lost 35–40% of the blood in her body. Due to the heavy bleeding, Dr. Gant immediately scheduled her for surgery. He noted that complainant's clothing was blood-soaked and that she had bruises in the shape of, or that "fit," someone's hand and fingerprints, and these bruises were located on the lower part of the right side of her abdomen. Bruises were also found on either side of her labia and on the lower, outer part of her left buttock. Dr. Gant noticed an abrasion between the rectum

and the vagina and that complainant's hymen was lacerated. Another laceration extended almost the full length of the vagina (approximately two inches). Dr. Gant testified that this laceration was consistent with the type of damage caused by a blunt object because the laceration was more like a tear than a straight line. Dr. Gant stated that a finger or pen could have caused the damage, but he thought it was probably a finger. Dr. Gant stated that he was informed that the incident occurred between 3:00 p.m. and 5:00 p.m. and that he concluded that the time estimate was consistent with the rate at which complainant was bleeding.

On August 1, 1986, after complainant's parents had filed a complaint against appellant, Officer George Cowan and another officer of the Cedar Hill Police Department went to appellant's home. No one was home, so they left a note for appellant's parents to contact the police department. When appellant did not return home that night, his parents filed a "runaway report" with the police department. The next day, appellant's pastor, Father Lynn Bauman, after hearing that appellant was wanted by the police, called and talked to one of the investigating officers, and he subsequently spoke with appellant on the phone. On August 3, 1986, appellant voluntarily surrendered himself to the police.

In his first point of error, appellant argues that his written statement was not admissible since he had not been advised of his rights by a magistrate prior to making the statement. Appellant contends that at the hearing on the motion to suppress, the testimony showed that he had been detained at the Cedar Hill Police Station for approximately two hours during which time he was interrogated by police officers; that undisputed testimony further showed that he wrote out a written statement concerning the commission of this offense *prior* to the time that he was admonished of his rights by the magistrate; and that the testimony showed that the magistrate advised

him of his rights under the provisions of section 51.09 of the Texas Family Code [1] *after* the written statement had been taken and reduced to writing.

Appellant asserts that the issue presented is whether his written statement should have been suppressed in light of the provisions of section 51.09.[2] Section 51.09 provides, in pertinent part:

(b) Notwithstanding any of the provisions of Subsection (a) of this section, the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:

(1) when the child is in a detention facility or other place of confinement or in the custody of any officer, the statement is made in writing and the statement shows that *the child has at some time prior to the making thereof* received from a magistrate a warning that:

(A) he may remain silent and not make any statement at all and that any statement he makes may be used in evidence against him;

(B) he has the right to have any attorney present to advise him *either prior to any questioning or during the questioning;*

(C) if he is unable to employ an attorney, he has the right to have an attorney to counsel with him prior to or during any interviews with peace officers or attorneys representing the state;

(D) he has the right to terminate the interview at any time;

(E) if he is 15 years of age or older at the time of the violation of a penal law of the grade of felony the juvenile court may waive its jurisdiction and he may be tried as an adult; and

(F) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present. The magistrate must be fully convinced that the child understands the nature and contents of

---

1. TEX.FAM.CODE ANN. § 51.09 (Vernon 1986). All further section references are to the Texas Family Code unless otherwise specified.

2. Appellant concedes that no constitutional issue was raised on appeal.

the statement and that the child is signing the same voluntarily. If such a statement is taken, the magistrate shall sign a written statement verifying the foregoing requisites have been met.

The child must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement and sign the statement in the presence of a magistrate who must certify that he has examined the child independent of any law enforcement officer or prosecuting attorney and determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights.

(Emphasis added.) Appellant urges that section 51.09 clearly requires that the magistrate admonish a juvenile *prior* to the interrogation and taking of the written statement.

In support of his contention, appellant cites *Carter v. State*, 650 S.W.2d 793, 799 (Tex.Crim.App.1983). In a concurring opinion in *Carter*, Justice Clinton, relying on the legislative history of the amendments to section 51.09(b), states:

In sum, the statutory scheme for taking a confession from a child outside the presence of and without concurrence from his lawyer is that he first be warned of his rights by a magistrate and then, once a confession is obtained, that he sign it in front of a magistrate upon a determination that those rights were properly waived.

*Id.* at 799. Appellant maintains that this language is further supported by this Court's opinion in *Rodriguez v. State*, 699 S.W.2d 358, 359 (Tex.App.—Dallas 1985, no pet.), in which this Court stated: "For a juvenile to make a valid waiver of his rights, a self-incriminating statement must be written down and signed by the juvenile *after* a magistrate follows the procedures set out in section 51.09(b)(1)" (emphasis original). *See also Adams v. State*, 636

S.W.2d 447, 448–50 (Tex.App.—Houston [1st Dist.] 1981, pet. ref'd). Finally, appellant argues that the subsequent warnings by the magistrate do not purge the written confession of its initial taint; such subsequent warnings fail to render a written confession admissible because the "cat" is "out of the bag" or the "secret is out for good." *See R.C.S. v. State*, 546 S.W.2d 939, 946 (Tex.Civ.App.—San Antonio 1977, no writ). Thus, appellant contends that admission of his written statement constituted harmful, reversible error.

The following evidence was elicited at the hearing on the motion to suppress appellant's written confession. On August 3, 1986, appellant voluntarily went to the police station and surrendered himself to the police.[3] He was taken by Officer Randy Coffey to the Criminal Investigation Division office located in the north wing of the police station separate and apart from the cell area, which is located in the south wing of the station. Appellant never came into contact with any adult offenders. Officer Coffey arrested appellant, apprised him of the charges against him, and gave him his *Miranda*[4] warnings. In addition, Officer Coffey explained that a child fifteen years of age or older who commits a felony offense could be certified as an adult. Appellant was not handcuffed or searched. Thereafter, Officer Coffey asked appellant if he understood his rights or had any questions. Appellant indicated that he understood his rights and had no questions, and he then signed and dated the sheet listing his rights. Officer Coffey proceeded to complete the necessary arrest reports and related paperwork.

Soon after, Investigator Jimmie Johns, Officer Coffey's partner, arrived at the investigation office. She introduced and identified herself to appellant, and Officer Johns again orally informed appellant of his *Miranda* rights. Appellant again indicated that he understood his rights. She then asked appellant whether he wanted to

---

**3.** Apparently appellant gave his name as Lloyd George Barnes (his stepfather's name) and he signed the statement in question as Lloyd Barnes. There is no dispute, however, that

Lloyd George Barnes is the same person as Lloyd George Petree.

**4.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

discuss the offense, and he agreed to do so. Without any promises or threats being made to him, appellant was asked to put his statement in writing. Appellant then wrote out his statement without signing it.

Approximately two hours after appellant surrendered himself, Judge Alta Graves, a Cedar Hill municipal judge, arrived at the police department to take appellant's statement. Judge Graves was introduced to appellant and was handed his handwritten statement, which, at that point, was still unsigned. Judge Graves and appellant were left alone in the room. Judge Graves again introduced herself and began a private interview with appellant, explaining that if at any time during the interview there were any words that appellant did not understand, he was to stop her, and appellant agreed to do so. Judge Graves proceeded to give appellant his warnings pursuant to section 51.09. After reading each warning, Judge Graves paused and asked appellant whether he understood it. Judge Graves then checked each warning off when appellant indicated that he understood it. This procedure continued until appellant received all his rights, whereupon Judge Graves signed the bottom of the page indicating that she had given appellant the required 51.09 statutory warnings. Appellant then read the warnings back to Judge Graves, and thereafter, he knowingly, intelligently, and voluntarily waived his rights and proceeded to read his unsigned statement to Judge Graves. Judge Graves made it clear to appellant that he did not have to give a statement at all.

When he completed reading the statement, he signed it in the judge's presence, and she signed as a witness to the fact that appellant had freely, knowingly, intelligently, and voluntarily signed the statement and that no law enforcement officer or prosecuting attorney was present. Finally, Judge Graves executed a document entitled "Magistrate's Certification and Acknowledgement of Voluntary Statement of a Juvenile." Appellant then saw his parents and was thereafter transported to the juvenile detention facility. Throughout the entire time appellant was at the police department, he appeared to the officers and to Judge Graves to be relaxed; he was polite and cooperative.

Based on testimony adduced at the motion to suppress hearing, the trial court entered findings of fact and conclusions of law,[5] in which it determined that: appellant voluntarily surrendered himself to the Cedar Hill police and was immediately taken to the Criminal Investigation Division office; the Criminal Investigation office was completely removed from the cell area of the facility and that appellant never came into contact with any adult offenders; appellant was fully informed, pursuant to *Miranda*, of his constitutional and statutory rights prior to making any statement and in compliance with section 51.09 of the Texas Family Code; appellant knowingly, intelligently, and voluntarily waived his constitutional and statutory rights and signed the statement in the presence of the judge, and outside the presence of any law enforcement officer or prosecuting attorney, and with the full understanding of his rights and with complete awareness of the content of the statement; that the statement was obtained free of persuasion, compulsion, and coercion; and that no promises of any kind were made to the appellant in exchange for his making the statement.

Since appellant's statement was made when he was in custody, its admissibility is governed by the Texas Family Code. *Lovell v. State*, 525 S.W.2d 511, 514–15 (Tex. Crim.App.1975). Section 51.09 renders a statement involuntary unless a juvenile, who is in a "detention facility or other place of confinement or in the custody of an officer," has at some time, prior to the "making" of the written statement, received the *Miranda* warnings from a magistrate with no law enforcement officer or prosecuting attorney present. In this instance, the question is whether a statement written *before* the statutory warnings are given can be considered voluntary *if* the

---

**5.** This case was earlier abated for the trial court to make findings of fact and conclusions of law pursuant to section 6 of article 38.22 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM.PROC.ANN. art. 38.22 § 6 (Vernon 1979).

statement is not signed until *after* the magistrate gave the juvenile his *Miranda* and statutory warnings, informed him that he did not have to give a statement at all, and was convinced that the juvenile understood the nature and contents of the statement and that the juvenile signed it voluntarily.

The cases relied on by appellant are distinguishable from the case at hand. In *R.C.S.*, following several hours of interrogation by law enforcement officials at the police station, the juvenile defendant signed a written confession. He was then placed in the juvenile detention center. During the next day and a half, someone determined that the confession would be inadmissible. The defendant was then taken from his place of confinement to the office of a magistrate where he was given the required warnings in the manner prescribed by the statute. He was then taken to police headquarters and interrogated in the same office where he had signed the previous statement. The defendant's responses were typed. The defendant was again taken before a magistrate, in whose presence he signed the statement. The magistrate had no knowledge of the juvenile's prior statement. The court in *R.C.S.* pointed out that section 51.09(b) contains no provisions concerning the circumstances under which a second confession by a child, given after an inadmissible first confession, will be purged of the taint of the previous illegal statement. *Id.* at 947. The court stated that a warning by a magistrate and a determination by the magistrate that the confession is voluntary is of questionable value when the magistrate's investigation is made in the absence of all knowledge of a prior illegal statement. The defendant's confession was held to be inadmissible under such circumstances. *Id.* at 947–48.

Appellant also cites *B.A.G. v. State*, 715 S.W.2d 790 (Tex.App.—Dallas 1986), *rev'd Griffin v. State*, 765 S.W.2d 422, 431 (Tex. Crim.App.1989). In *B.A.G.*, the juvenile defendant was arrested and given her *Miranda* warnings. After being questioned at the police department, the defendant

made incriminating oral statements.[6] She was then taken before a magistrate, who informed her of her rights. The defendant was returned to the police station where her written statement was taken. She then signed her statement in the presence of a second magistrate. Neither magistrate was informed of the defendant's prior incriminating oral statement. This Court determined that the statement was inadmissible based on the "cat-out-of-the-bag" theory of involuntariness. The Court of Criminal Appeals reversed this Court, stating that the record supports the trial court's conclusion that, under the "totality of the circumstances," appellant's written confession was voluntary. *Griffin*, 765 S.W.2d at 427. The Court of Criminal Appeals also reiterated the fact that the "cat-out-of-the-bag" theory was of "limited value" after *Bell v. State*, 724 S.W.2d 780, 792–93 (Tex. Crim.App.1986), *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); however, it declined to declare the theory "cold in the grave." *Griffin*, 765 S.W.2d at 427.

We conclude that *R.C.S.* and *B.A.G.* are clearly distinguishable from the present case. In this instance, Judge Graves was aware that appellant had already written out a statement, but that it was unsigned. Her determination that appellant's statement was voluntary *was made with knowledge and consideration of that fact.* In both *R.C.S.* and *B.A.G.*, the magistrate's determination of voluntariness of the statement was made *absent knowledge* of the crucial, relevant fact of a prior statement.

◼ Moreover, our review of the opinions in *R.C.S.* and *B.A.G.* indicates that in each case the decision to reverse was compelled not by the fact that there was a prior statement, but by the magistrate's lack of awareness of the prior statement in determining the voluntariness of the subsequent statement. In this instance, appellant was read his statutory rights by two police officers and by Judge Graves. Judge Graves discussed the content of the statement with appellant, and immediately prior to the

---

**6.** Apparently the Court of Appeals in *B.A.G.* equated an unsigned written statement with an oral statement. *See Griffin*, 765 S.W.2d at 424 n. 3.

signing of the statement, she advised him that he did not have to make a statement at all. Because the written statement was not signed until Judge Graves had advised him of his rights as set forth in section 51.09, and had informed him that he did not have to make a statement at all, and until after appellant had knowingly, intelligently, and voluntarily waived those rights, we conclude that the trial court did not err in admitting the written, signed statement into evidence. We overrule appellant's first point of error.

In his second point of error, appellant contends that the evidence in insufficient to support his conviction. Specifically, appellant asserts that the sufficiency of the evidence to support his conviction must be viewed in light of the charge that was given to the jury:

> Because a verdict of "guilty" necessarily means the jury found evidence of that on which it was authorized to convict, the sufficiency of the evidence is measured by the charge *that was given*. It follows that if evidence does not conform to the instruction given, it is insufficient as a matter of law to support the only verdict of "guilty" which was authorized.

*Boozer v. State*, 717 S.W.2d 608, 610–11 (Tex.Crim.App.1984) (footnotes omitted) (emphasis original); *see Polk v. State*, 749 S.W.2d 813, 815 (Tex.Crim.App.1988). Appellant states that in the instant case, the application portion of the jury charge authorized the jury to find the appellant guilty if a finger *or* pen was used to commit the offense. The jurors found that the offense was committed by the use of a finger. Thus, appellant urges this Court to conclude that the evidence is insufficient to support a finding that a finger was used because complainant testified that the appellant committed the offense by use of what felt like a pen. Appellant argues that the State attempted to sustain its burden of proof that the object was a finger by the use of the written statement; however, appellant alleges that because the evidence is insufficient to support the conviction, a judgment of acquittal must be entered.

In reviewing the sufficiency of the evidence, our inquiry is limited to determining whether, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Purtell v. State*, 761 S.W.2d 360, 365 (Tex.Crim.App.1988). The same standard applies in both direct and circumstantial evidence cases. *See Livingston v. State*, 739 S.W.2d 311, 329 (Tex.Crim.App. 1987), *cert. denied*, — U.S. ——, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). The jury is entitled to make credibility determinations regarding the testimony of witnesses and may believe all or any part of any witness's testimony. *See Williams v. State*, 692 S.W.2d 671, 676 (Tex.Crim.App.1984).

A conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except the guilt of the defendant; proof amounting to only a strong suspicion or mere probability is insufficient. *Guiton v. State*, 742 S.W.2d 5, 10 (Tex.Crim.App.1987). Yet every fact need not point directly and independently to the defendant's guilt. It is enough if the verdict of guilty is warranted by the combined and cumulative force of all incriminating circumstances. *See Livingston v. State*, 739 S.W.2d at 330. We note that penetration may be proved by circumstantial evidence. *Nilsson v. State*, 477 S.W.2d 592, 595 (Tex.Crim.App.1972). As previously discussed, the written statement was admissible and was properly admitted into evidence. Appellant's written statement states that he used his finger, thus the evidence is clearly sufficient to prove the allegation in the indictment and the jury's conclusion that a finger was used to commit the offense. Aside from the written statement, additional evidence exists to support the jury's verdict. Complainant testified that appellant used something that "felt like a pen," but she did not see the object. Dr. Gant testified that the complainant's injuries were caused by a blunt object which was "probably a finger." He also testified that there was a hand print

on the lower right quadrant of the complainant's abdomen.

We hold that, measuring the evidence against the charge as given and viewing the evidence in the light most favorable to the verdict, the evidence was sufficient *for* a rational trier of fact to have found the elements of the crime beyond a reasonable doubt. We include the confession in our review of the sufficiency of the evidence. *See Lockhart v. Nelson,* — U.S. —, —, 109 S.Ct. 285, 291, 102 L.Ed.2d 265 (1988); *Osban v. State,* 726 S.W.2d 107, 111 (Tex.Crim.App.1986). The evidence is, therefore, sufficient to support the conviction. We overrule appellant's second point of error and affirm the trial court's judgment.

HOWELL, Justice, dissenting.

I dissent. The majority has written at great length to demonstrate that the conduct of which appellant was charged is repulsive. However, that matter is not in issue; the requirement of a fair and impartial trial in full compliance with the provisions of the law is never diluted simply because the offense is perceived as particularly heinous.

Likewise, the majority has gone to some length in an effort to demonstrate that appellant's confession was voluntary. This conclusion again begs the issue: Did the authorities comply with the black letters of the statute? Plainly, they did not. The confession was inadmissible; its use in evidence requires reversal of the conviction.

Specifically, the statute clearly requires that the accused juvenile appear twice before the magistrate. Although not entirely clear, it is the apparent intendment of section 51.09(a)(1) of the Texas Family Code that the first appearance be made as soon as the juvenile is identified as a probable suspect and *before serious interrogation is commenced.* Thereafter, if the magistrate permits the interrogation and if the interrogation produces a confession that is reduced to writing, a second trip before the magistrate is required, at which time the juvenile must receive a second set of warnings. Only after the second set of warnings have been given may the juvenile's signature be taken; this must be done in the presence of the magistrate and outside the presence of any law enforcement personnel.

This is the only view supported by the history of the legislation. Before 1975, section 51.09 made the confession of a juvenile inadmissible unless an attorney was present at the interrogation and also witnessed the signature of the juvenile. *Lovell v. State,* 525 S.W.2d 511, 513 (Tex. Crim.App.1975). Furthermore, strict compliance with the statute was required. *Id.* at 515 ("The confession, having been taken in violation of Section 51.09, is inadmissible as a matter of law.").

The statute was amended in 1975 in response to complaints by law enforcement authorities that its requirements exceeded constitutional minimums and made juvenile confessions practically impossible to attain. Instead, the legislature substituted the current requirement that the juvenile be brought before the magistrate twice. *Carter v. State,* 650 S.W.2d 793, 798–99 (Tex. Crim.App.1983) (Clinton, J. concurring).

In the case at hand, appellant was interrogated at length before he was taken in front of the magistrate, a violation of the statute no matter how uncoerced and permissive. When appellant confessed, the officers caused him to write out his confession in his own handwriting before the magistrate arrived, another violation of the statute. Appellant was then presented to the magistrate in the first instance accompanied by his confession as a *fait accompli.* The magistrate, after giving the statutory warnings and being assured that the confession was voluntary, witnessed appellant's signature outside the presence of the officers. Although appellant's post-confession appearance was entirely regular, no amount of fairness in the second appearance before the magistrate can remedy the complete omission of a pre-confession appearance.

The majority has misstated the issue of the case.[1] The central issue is whether the

statutory command for two trips before the magistrate was observed. Admittedly, it was not. The subsidiary issue is whether the failure to observe the two-trip requirement precludes admission of the confession. Plainly, if the statute is to be given the role that was intended by the legislature, the confession must be excluded. The legislative history states:

> Title III of the Family Code was enacted in 1973 with the stated purpose of assuring a fair hearing in which the constitutional and other legal rights of the parties are recognized and enforced. V.T.C.A., Family Code, Section 51.01. The Legislature was aware of the admonitions of the United States Court in *Haley v. Ohio*, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948), that the admissions and confessions made by a child require careful inquiry and special caution, and in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), that the juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and prepare to submit it. The child "requires the guiding hand of counsel at every step of the proceedings against him." The Gault decision extended the constitutional right to remain silent, and thereby to resist compulsory self-incrimination, to children. Title III of the Family Code is an enactment of the above concepts; it determines and protects the best interest of the child, assures the constitutional and other legal rights of the child are recognized and enforced, and permits waiver of the child's rights only under certain conditions. *In re R.E.J.*, 511 S.W.2d 347 (Tex.Civ.App.—Houston [1st Dist.] 1974). The Family Code underscores its protections by providing that, in the adjudication hearing provided by Title III, an extrajudicial statement which was obtained without fulfilling the requirements of this title or of the Constitution of this State or the United States may not be used in such hearing. V.T.C.A., Family Code, Section 54.03(e). This section augments Section 51.09 but does not limit it. *See In re F.G.*, 511 S.W.2d 370 (Tex.Civ.App.—Amarillo 1974). Since the enactment of the Family Code, the courts have concluded that the Legislature obviously provided a safeguard for children, including the right to silence and an absolute right to an attorney during custodial interrogations, unless with an attorney the child waives that right in accordance with the terms of the statute. The "waiver" executed without the child's attorney is a nullity.

*Lovell,* 525 S.W.2d at 514. Admittedly, *Lovell* was addressing the pre–1975 version of section 51.09 requiring the presence of an attorney during interrogation of the juvenile. However, the policy considerations underlying the original and the revised statute are the same—the protection of juveniles. No matter how extensive the showing of voluntariness, nothing obscures the fact that this juvenile did not receive the two-appearance protection extended to him by the statute. *For us to brush aside this fundamental defect in the proceedings is to invite future omissions to follow the command of the law.*

The only significant question raised by this case is whether the subsequent authority of *Griffin v. State,* 765 S.W.2d 422 (Tex.Crim.App.1989), has sounded a retreat from *Lovell* 's declaration of principle as quoted above. *Griffin* deals with the double confession problem, whether a prior confession obtained in the absence of legal requirements or proper legal form affects a subsequent confession that, standing alone, suffers from no impediment. *Griffin* is presently inapplicable because here, there

---

**1.** The majority states at page 511–12: "In this instance, the question is whether a statement written *before* the statutory warnings are given can be considered voluntary *if* the statement is not signed until *after* the magistrate gave the juvenile his *Miranda* and statutory warnings, informed him that he did not have to give a statement at all, and was convinced that the juvenile understood the nature and contents of the statement and that the juvenile signed it voluntarily." (emphasis in original)

was no second confession and the required pre-confession appearance before the magistrate never occurred.[2]

I refuse to join in the unstated but necessarily implicit holding of our majority to the effect that if the post-confession trip before the magistrate is fair and exhibits voluntary action on the part of the juvenile, the statutory requirement of a preliminary trip before serious interrogation begins may be disregarded as superfluous. With respect to those of tender age, the law requires both pre-confession and post-confession appearances before the magistrate. I therefore dissent. The case should be reversed and remanded for a new trial that does not rely upon the unlawfully secured confession.

**2.** As a matter of fact, the frequency with which the double confession problem appears to be arising in connection with juvenile prosecutions is a telling indicator that our law enforcement authorities are widely disregarding section 51.-09's command that a juvenile be brought before a magistrate in the first instance before serious interrogation commences.